IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CEDRIC GRAVES II,

        Plaintiff,

v.

OREGONIAN PUBLISHING
COMPANY LLC dba OREGONIAN
MEDIA GROUP,

        Defendant.

Case No. 3:19-cv-01755-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

        Pro se plaintiff Cedric Graves II initiated this employment discrimination lawsuit against the "Oregonian" based on four days of unpaid newspaper delivery wages.[1] All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). Defendant now moves for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, defendant's motion is granted, and this case is dismissed.

---

[1] The Court notes that plaintiff previously filed a virtually identical lawsuit, which was dismissed for failure to pay the requisite filing fee. <u>Graves II v. Oregonian</u>, Case No. 3:19-cv-01523-JR.

Page 1 – OPINION AND ORDER

## BACKGROUND

In September 2018, plaintiff was hired to deliver Oregonian newspapers from a distribution center located at 127th Airport Way in Portland, Oregon. Compl. pgs. 3-5 (doc. 1). Plaintiff worked for "4 days as a delivery driver" before being transferred to a different distribution center. Id. at pgs. 4-5. Plaintiff was allegedly never compensated for those four days, despite "several attempts" to contact his supervisors, "Marcus and Anthony." Id.

On October 31, 2019, plaintiff initiated this lawsuit under Title VII, alleging that he was "not pa[id] for working" due to his race and gender (i.e., "African American" and "male," respectively). Id. at pg. 4.

On September 25, 2020, defendant filed the present motion for summary judgment. That same day, the Court provided plaintiff with a "Summary Judgment Advice Notice," explaining this lawsuit's procedural posture and what might be expected from plaintiff in order to survive summary judgment. Specifically, plaintiff was instructed that he "cannot simply rely on what [his] complaint says" at this stage in the proceedings and must instead "set out specific facts in depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials, as provided in Rule 56(c), that contradict the facts shown" via defendant's documents, or his case would be dismissed. Summ. J. Advice Notice 1 (doc. 24). As of the date of this Opinion, plaintiff has not filed a response to defendant's motion.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

Defendant argues that summary judgment is warranted because plaintiff failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission ("EEOC") prior to filing suit. In addition, defendant maintains plaintiff "was never employed by Oregonian Publishing Company, so he cannot possibly bring a claim against them for unlawful employment practices." Def.'s Mot. Summ. J. 3 (doc. 23).

### I.   Administrative Exhaustion

"A person seeking relief under Title VII must first file a charge with the EEOC within 180 days of the alleged unlawful employment practice [or if] the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged

unlawful employment practice." Surrell v. Cal. Water Serv., 518 F.3d 1097, 1104 (9th Cir. 2008).

In the "Exhaustion of Administrative Remedies" section of his pro se complaint, plaintiff did not answer the question soliciting information concerning when he "filed a charge with" the EEOC.[2] Compl. pg. 5 (doc. 1). He did, however, check a box indicating that he was not issued a right to sue letter. Id.

Defendant represents that it "has never received any correspondence from the EEOC regarding [plaintiff's] alleged charge." Def.'s Mot. Summ. J. 5 (doc. 23); see also 42 U.S.C. § 2000e-5(e)(1) (Title VII requires that "notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days" of the EEOC receiving a timely complaint). Defendant also states under penalty of perjury that, "[d]uring the conferral [process,] Plaintiff admitted that he did not complete his EEOC complaint." Ray Decl. ¶ 2 (doc. 23-2).

Plaintiff does not contest defendant's statement or proffer any evidence to the contrary. See Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003) (nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements"); see also Taylor v. W. Or. Elec. Coop., Inc., 2005 WL 8177015, *2 (D. Or. Oct. 21, 2005) (claim was futile where the plaintiff "has not filed any charge of retaliation with the EEOC and has not received a right to sue letter"). Accordingly, defendant's motion is granted on this basis.

---

[2] The line allocated for a narrative response appears to contain a continuation of plaintiff's recitation of facts. Compl. pgs. 4-5 (doc. 1). To the extent the information contained in this section was intended to address the exhaustion requirement, the only dates provided are "Feb or March 2019." Id. at pg. 5. Thus, even accepting those dates, it is unclear whether any EEOC charge was timely filed given that the underlying unlawful employment action occurred in September 2018.

**II.     Proper Defendant**

It is axiomatic that, in order to impose Title VII liability, the plaintiff must establish that he or she was employed by the party alleged to have engaged in the underlying unlawful discrimination. See, e.g., Justice v. Rockwell Collins, Inc., 117 F.Supp.3d 1119, 1135 (2015), aff'd, 720 Fed.Appx. 365 (9th Cir. 2017); see also 42 U.S.C. § 2000e-2(a) (Title VII governs claims of "unlawful employment practice[s]" between an employer and employee).

Defendant has put forth undisputed evidence that an employment relationship did not exist. Namely, the record evinces plaintiff never: (1) submitted an employment application or résumé to defendant; (2) "interviewed with any employee of Oregonian Publishing Company"; or (3) completed any of the requisite onboarding paperwork, such as an I-9 or W-4. Alberts Decl. ¶¶ 4-6 (doc. 23-1).

Further, although defendant concedes that one of its distributors operates a facility located at 127th Airport Way, defendant itself does not "own or lease space at 127th and Airport Way" or "hire delivery drivers." Id. at ¶¶ 2-3. Rather, defendant "contracts with independent third parties to perform distribution services." Id.; see also Def.'s Mot. Summ. J. 7 (doc. 23) ("[t]he Oregonian does not have any manager named Marcus that would have authority to hire Plaintiff (nor is there an assistant manager named Anthony)").

As such, the only reasonable inference based on the unrefuted evidence of record is that defendant was never responsible for the terms and conditions of plaintiff's employment with "Anthony and Marcus" at 127th Airport Way or, by extension, for plaintiff's wages (unpaid or otherwise). See Adcock v. Chrysler Corp., 166 F.3d 1290, 1292 (9th Cir. 1999) (explaining that "Title VII protects employees, but does not protect independent contractors," and articulating the test for "[d]etermining whether a relationship is one of employment," the "primary factor" of

which "is the extent of the employer's right to control the means and manner of the worker's performance"). For this additional reason, defendant is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (doc. 23) is granted and this case is dismissed. All pending motions are denied as moot.

IT IS SO ORDERED.

DATED this 29th day of October, 2020.

        /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge